# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| STEPHENIE RENEE BLACKWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:13-cv-00739 |
| v. ) | Judge Trauger / Knowles |
| ) | |
| DAVID H. McCORD, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon Defendant's Motion for Summary Judgment. Docket No. 47. Along with that Motion, Defendant has contemporaneously filed a supporting Memorandum of Law (Docket No. 47-1), a Statement of Undisputed Facts (Docket No. 47-2), and the Affidavits with Exhibits of Neil McIntire and Mary Beth Chambers (Docket No. 47-3).

Plaintiff, who is proceeding pro se and in forma pauperis, has not responded to Defendant's Motion for Summary Judgment (Docket No. 47) or his Statement of Undisputed Facts (Docket No. 47-2), nor has she filed her own Statement of Undisputed Facts.

Plaintiff alleges racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42. U.S.C. § 2000, et seq. ("Title VII"). Docket No. 1. Although there are no factual allegations in Plaintiff's Complaint, Plaintiff's Charge of Discrimination avers that Defendant discriminated against her by reducing her hours after she returned from having undergone a medical procedure, and then pretexually terminating her on account of untrue "patient

complaints."[1] Docket No. 2, p. 6, Charge of Discrimination, dated January 16, 2013. Plaintiff seeks:

>   a.  Back Pay for Hour that were cut from Nov. 19, 2012 [to] January 11, 2013. From 40 Hours to 32 Hours a week.
>
>   b.  Severance pay for Being a Dependable Employee for 10 years on Time.
>
>   c.  To Have My Record clear and If any company calls For Employment Verification How Years [*sic*] Employed and the Date started and Ending Date nothing else Because everything that was told to Unemployment office, EECO [*sic*] were un Truth Information.

Docket No. 1 (capitalization original).

Defendant filed the instant Motion and supporting materials arguing that he is entitled to summary judgment because: (1) there are no genuine issues as to any material fact; (2) Plaintiff's hours were not reduced in violation of Title VII due to her protected class; and (3) Plaintiff's Complaint fails to specify any alternative theory of liability upon which a claim for lost wages can be based in light of this Court's February 25, 2014 Order.[2] Docket No. 47. Defendant acknowledges that Plaintiff is a member of a protected class, that she was qualified to fulfill the

---

[1] Plaintiff submitted a copy of her Charge of Discrimination the same day she filed her Complaint in this action. Docket Nos. 1, 2. According to the record, Plaintiff attached the Charge of Discrimination to her Application to Proceed In Forma Pauperis rather than to her Complaint. In view of the fact that Plaintiff is proceeding pro se, the Court will consider the factual allegations in the Charge of Discrimination as if they had been made in the Complaint itself.

[2] On February 25, 2014, Judge Trauger dismissed Plaintiff's wrongful termination claim, finding that her Complaint failed to allege that "similarly situated individuals from an unprotected class who were complained about by patients were treated differently than she was." *See* Docket No. 15. Accordingly, Plaintiff's sole remaining claim is that her hours were reduced when she returned from medical leave. *Id.*

2

duties for which she was hired, and that her hours were reduced by 20% upon her return to work, but Defendant argues that the undisputed facts reveal that Plaintiff's performance was not always satisfactory, and that she was not treated less favorably than a sufficiently similarly situated individual outside her protected class. Docket No. 47-1. Additionally, Defendant argues that Plaintiff's "own factual recitation" in her response to his written discovery requests "shows that her hours were reduced to accommodate her return to work despite an unplanned, extended leave of absence that had worked an unnecessary hardship on [his] office, and [P]laintiff was not entitled under [his] personnel handbook to a return to a full forty-hour work week." *Id.*

Defendant further argues that Plaintiff concedes that she was told that the decision to reduce her hours "was not personal," but rather, was because "[he] had to hire someone," and "could not afford to have two full-time employees." *Id.* Defendant asserts that the decision to reduce Plaintiff's hours "was, in equal parts, due to (1) the inadequate notice provided by [P]laintiff of the true duration of her medical leave, which caused [him] to have to hire additional staff, and (2) [his] decision that keeping two full-time employees to do the same job upon [P]laintiff's return was not tenable." *Id.* Defendant notes that Plaintiff was not entitled to a return to work following her leave at all, and that, at his discretion, Plaintiff could have been laid off. *Id.* Defendant maintains that, instead, he "tried to help [P]laintiff by returning her to work at 80% capacity of her pre-leave hours." *Id.*

Defendant summarizes:

> Simply put, it is undisputed that, while [P]laintiff initially requested two weeks off, she came to her employer some five days before her leave was scheduled to begin and reported that her leave would instead be six weeks instead of the requested two weeks. When that situation proved untenable to the employer, and it

3

endangered his practice, the employer took reasonable steps to
supply his personnel needs on what was initially intended to be a
temporary basis. When the temporary employee, who concededly
is Caucasian, turned out to be a good and dependable employee,
that employee was extended a full-time employment opportunity,
which she accepted. Upon [P]laintiff's return following her
extended leave of absence, instead of simply being denied
employment or laid off as would have been appropriate and
permissible under the Employee Handbook, [Defendant] returned
her to work with marginally reduced hours at the same rate of pay.
There simply is nothing in the record from [P]laintiff to support a
claim that her hours were reduced because of her protected status.
Instead, the employer had a valid, good-faith, nondiscriminatory
reason to reduce [P]laintiff's hours in an attempt to accommodate
her return to work and still maintain an efficient workplace. This
action by the employer does not violate Title VII, nor does it
constitute discrimination against [P]laintiff.

*Id.*

As noted, Plaintiff has not responded to the instant Motion or supporting materials.

For the reasons to be discussed below, the undersigned finds that there are no genuine issues as to any material fact and that Defendant is entitled to a judgment as a matter of law. Accordingly, the undersigned recommends that Defendant's Motion for Summary Judgment (Docket No. 47) be GRANTED, and that this action be DISMISSED.

## II. Undisputed Facts[1]

### A. Affidavit of Neil McIntire

Neil McIntire, an attorney licensed to practice law in the State of Tennessee, represents Defendant in this action. Docket No. 47-3, p. 3-12, Affidavit of Neil McIntire ("McIntire Aff."), ¶¶ 2, 3. On November 11, 2015, Mr. McIntire served Defendant's First Set of Interrogatories and

---

[1] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56 and are undisputed.

First Requests for Production of Documents upon Plaintiff via U.S. Mail, postage prepaid, true and correct copies of which have been submitted as Exhibit A. *Id.*, ¶ 4. On December 11, 2015, Mr. McIntire received electronic notice from the Court of Plaintiff's filing of her communication deemed to be a "Notice" (Docket No. 41) and supplying what appeared to be documentation and information in response to Defendant's discovery requests. *Id.*, ¶ 5. Mr. McIntire received nothing further or additional from Plaintiff other than what was filed with the Court. *Id.*

**B. Affidavit of Mary Beth Chambers**

Mary Beth Chambers has served as Defendant's secretary for over 10 years and is also his business manager. Docket No. 47-3, p. 13-27, Affidavit of Mary Beth Chambers ("Chambers Aff."), ¶ 2. In her capacity as secretary and business manager, Ms. Chambers is charged with a certain measure of responsibility for human resources and personnel duties at Defendant's practice. *Id.*, ¶ 3. She has also served as custodian of records for the personnel files and other human resources-related materials for Defendant. *Id.*

On September 10, 2012, Plaintiff provided her supervisor, Kim Coleman, an Associate Leave Request form requesting a leave for two weeks beginning October 8, 2012; a true and correct copy of which has been attached as Exhibit A. *Id.*, ¶ 4. On October 4, 2012, four days before her surgery date, Plaintiff informed Ms. Coleman that she would be out for six weeks instead of the previously requested two weeks. *Id.*, ¶ 5. At that time, Ms. Chambers modified Plaintiff's leave request form to reflect the longer duration leave. *Id.* Ms. Chambers also provided Plaintiff assistance in requesting coverage under Defendant's short-term disability program. *Id.*, ¶ 6.

In light of Plaintiff's original request for a two week leave, Defendant had been able to

arrange coverage of her shift via other employees. *Id.*, ¶ 7. Plaintiff's failure to notify him of the extended request for leave with an appropriate time frame to plan for coverage for her position, however, put Defendant in an untenable situation. *Id.* Plaintiff's supervisor, Ms. Coleman, who also serves as the Accounts Receivable Manager, was forced to cover Plaintiff's position at the front desk during the extended leave, which put Defendant's billing and collection process in jeopardy. *Id.*, ¶ 8. Accordingly, on November 5, 2012, approximately one month after Plaintiff's surgery, Defendant hired Ashley Long to assist Ms. Coleman at the front desk. *Id.*, ¶ 9. Ms. Long's hire was initially planned to be temporary, but she proved to be a valuable employee, and her position was made permanent and full-time. *Id.*, ¶ 10.

During Plaintiff's absence, Ms. Coleman called and checked on her status to see if she could return earlier, but her response was always that she was not ready to return to work. *Id.*, ¶ 11. Upon Plaintiff's return to work after her full six week leave, she was informed that she would be able to continue at the front desk with reduced hours so that she would not be totally left without a job. *Id.*, ¶ 13.

Plaintiff was asked to train Ms. Long so that Ms. Long could "float" between various positions in the office to help everyone as needed. *Id.*, ¶ 14. Plaintiff was resistant to the training process, and she treated Ms. Long with contempt and disrespect, behavior that was witnessed by multiple employees, including Ms. Chambers. *Id.*, ¶ 15. Prior to her leave of absence, Plaintiff had served as a competent employee of Defendant's office for multiple years. *Id.*, ¶ 18.

During Plaintiff's employment, several other employees requested and were granted medical leave. *Id.*, ¶ 16. Specifically, the following employees took the following time off for medical treatment, all of which time was either covered by their respective accumulated paid

time off or was taken without pay and was taken after providing Defendant with sufficient prior notice both of the nature and duration of the requested time off: (a) Susan Norris was out fifteen hours during the two week period ending November 4, 2012, and eight hours during the two week period ending December 2, 2012; (b) Jenna Lowe was out sixteen hours during the two week period ending September 23, 2012, eight hours during the two week period ending October 21, 2012, and eight hours during the two week period ending December 2, 2012; and (c) Kim Coleman was out for six weeks on maternity leave from July 2, 2012 through August 10, 2012. *Id.*, ¶ 17. Because of her condition (pregnancy), Ms. Coleman provided Defendant with sufficient notice to allow him to ensure coverage of her position during her absence. *Id.*

A true and correct copy of Defendant's Employer's Policy Manual is attached as Exhibit B and states in relevant part as follows:

> The Employer will make every attempt, but cannot guarantee, to return the Employee to the same or similar job upon his or her return from a leave of absence. When such a job is not immediately available, the Employee will be considered as "laid off" for lack of work. The Employee will then be offered the first suitable job, when economic conditions allow, that becomes available with no interruption in seniority or eligibility for benefits.

*Id.*, ¶ 12.

Plaintiff acknowledged in writing her receipt of the Manual when she was hired, and a true and correct copy of her acknowledgment is attached as Exhibit C. *Id.*, ¶ 13.

There was nothing discriminatory or unique about Plaintiff's situation upon her return to work, except for the fact that, unlike the other three employees mentioned, Plaintiff did not provide sufficient prior notice of the duration of her extended leave of absence to allow Defendant to sufficiently cover her shift. *Id.*, ¶ 19. When it became clear that Plaintiff's

continued absence was endangering the smooth operation of Defendant's business, Defendant took appropriate and necessary steps and hired another employee who, initially, was only intended to be part-time. *Id.*, ¶ 20. When that employee proved to be dependable and valuable to Defendant's practice, the employee was converted to a full-time employee. *Id.*

Despite having filled Plaintiff's position in her extended absence, Defendant allowed Plaintiff to return to work, albeit with slightly reduced hours, to allow a smooth integration of her back into Defendant's office staff. *Id.*, ¶ 21. There was nothing discriminatory about the reduction in Plaintiff's hours. *Id.*, ¶ 22. The reduction in hours was simply an attempt on Defendant's part to accommodate a long-time employee by returning her to substantial part-time employment, instead of disallowing her return following an extended leave of absence without appropriate forewarning. *Id.*

**III. Applicable Law and Analysis**

**A.  Local Rules 7.01(b) and 56.01(c) and (g)**

Local Rule 7.01(b) states, in pertinent part:

> Each party opposing a motion shall serve and file a response, memorandum, affidavits, and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendant filed the pending Motion on January 21, 2016. Docket No. 47. Plaintiff has failed to respond to the instant Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> c. Any party opposing the motion for summary judgment must respond to each fact set forth by the movant ...
>
> . . .
>
> g. Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has also failed to respond to Defendant's Statement of Undisputed Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendant is entitled to a judgment as a matter of law.

**B. Summary Judgment Standards**

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendant has met his burden under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings,

9

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## C. Title VII of the Civil Rights Act of 1964

### 1. Generally

Title VII of the Civil Rights Act of 1964 ("Title VII") protects employees from discrimination on the basis of an individual's race, color, religion, sex, or national origin, and provides, in part:

> It shall be an unlawful employment practice for an employer--
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

Federal courts do not have jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge. *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998) (*citing Ang v. Procter & Gamble Co.,* 932 F.2d 540, 544-45 (6th Cir. 1991)). Thus, as a prerequisite to bringing a Title VII discrimination claim in federal court, a claimant is required to file a charge of discrimination or retaliation with the EEOC and is precluded from seeking judicial review until the Commission has made a final disposition of his claim. 42 U.S.C. § 2000e-5. *See also, United Air Lines, Inc. v. Evans*, 431 U.S. 553, 554, 97 S. Ct. 1885, 1887, 52

L. Ed. 2d 571 (1977). The wording of the allegations in the EEOC charge does not, however, have to be exact or all-encompassing; rather, the court may consider allegations not explicitly stated in the EEOC charge if those allegations could reasonably be expected to grow out of the charge of discrimination. *Tipler v E. I. du Pont de Nemours & Co.*, 433 F.2d 125, 131 (6th Cir. 1971) (*citing Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 465-66 (5th Cir. 1970)*; King v. Georgia Power Co.*, 295 F.Supp. 943 (N.D. Ga. 1968)).

## 2. Prima Facie Case of Discrimination

In order to establish a prima facie case of discrimination in violation of Title VII, a plaintiff must prove that,

1. she is a member of a protected class;

2. she was qualified for her job and performed it satisfactorily;

3. despite her qualifications and performance, she suffered an adverse employment action;[2] and

4. that she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class.

*Johnson v. University of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)) (footnote added).

A plaintiff may establish a claim of discrimination under Title VII either by introducing direct evidence of discrimination, or by proving circumstantial evidence that would support an inference of discrimination. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000),

---

[2] An adverse employment action is one that causes a materially adverse change in a term of employment, such as significantly diminished responsibilities, termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, or a material loss of benefits. *See Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 885-86 (6th Cir. 1996).

12

*citing Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id.*

Under the direct evidence approach, once the plaintiff introduces evidence that the employer terminated her because of her protected status, the burden of persuasion shifts to the employer to prove that it would have terminated the plaintiff even had it not been motivated by discrimination. *Johnson*, 215 F.3d at 572, *citing Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (*citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989)).

If the plaintiff lacks direct evidence of discrimination, the circumstantial evidence approach is used and the *McDonnell Douglas-Burdine* tripartite test is employed. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), as later clarified by *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The *McDonnell Douglas-Burdine* tripartite test requires the plaintiff to first establish a prima facie case of discrimination. *Id.* If the plaintiff is able to do so, a mandatory presumption of discrimination is created and the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *Id.* If the defendant carries this burden, the plaintiff must then show that the proffered reason was actually pretextual. *Id.* The plaintiff may establish pretext by showing that, 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; or 3) the stated reasons were insufficient to explain the defendant's action. *Id. See also, Cicero v. Borg-Warner Automotive, Inc.,* 280 F.3d 579, 589 (6th Cir. 2002). "A reason cannot be proved to be 'a pretext

for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

**D.  The Case At Bar**

As discussed above, Plaintiff avers that Defendant discriminated against her when her hours were reduced by eight hours per week upon her return from medical leave. Docket No. 1. While Plaintiff is a member of a protected class, who was qualified to fulfill her duties for which she was hired, and whose hours were reduced by 20% upon her return to work from medical leave, the undisputed facts establish, *inter alia*, that:

(1) Plaintiff informed her supervisor four days before her surgery date that she would be out for six weeks, rather than the previously reported two weeks;

(2) Ms. Chambers modified Plaintiff's leave request form to reflect the longer duration leave and provided Plaintiff assistance in requesting short-term disability benefits;

(3) Defendant covered Plaintiff's duties for as long as possible via other employees, but when Defendant's billing and collection process was in jeopardy, Defendant hired Ms. Long as a full-time employee (first temporarily and, because she proved to be dependable and valuable to Defendant's office, later permanently);

(4) Defendant's Employer's Policy Manual explicitly states that Defendant would "make every attempt, but cannot guarantee, to return the Employee to the same or similar job upon his or her return from leave of absence" and that "[w]hen such a job is not immediately available, the Employee will be considered as 'laid off' for lack of work";

(5) Since Defendant had filled Plaintiff's position during her extended absence and

14

Plaintiff had been a long-time competent employee, rather than lay her off as permitted by his Employer's Policy Manual, Defendant allowed Plaintiff to return to work and continue working at the front desk with reduced hours so that she would not be left without a job; and

(6) There was nothing discriminatory about the reduction in Plaintiff's hours; rather the reduction in hours was Defendant's accommodation for Plaintiff to allow her to maintain substantial part-time employment, rather than laying her off entirely.

*See* Docket No. 47-3, Chambers Aff., *passim*.

Plaintiff simply cannot establish either that her hours were reduced because of her protected status, or that other "similarly situated individuals" outside her protected class were treated more favorably, nor can she establish that there was anything discriminatory about Defendant's decision to reduce her hours upon her return to work after her extended medical leave. Accordingly, Plaintiff cannot establish that Defendant discriminated against her.

## VI. Conclusion

For the foregoing reasons, the undersigned finds that there are no genuine issues as to any material fact and that Defendant is entitled to a judgment as a matter of law. The undersigned therefore recommends that Defendant's Motion for Summary Judgment (Docket No. 47) be GRANTED, and that this action be DISMISSED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of

service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge